## A. O. ANDERSEN & CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. November 6, 1922.)

No. 3899.

1. **Food ⊚⟶24—"Article," as used in statute authorizing condemnation of adulterated food, not limited to each individual container.**

In Food and Drug Act June 30, 1906, § 10 (Comp. St. § 8726), providing for seizure and condemnation of "any article of food" that is adulterated or misbranded, the word "article" is used in a broad and comprehensive sense, and as applied to a shipment of a food product in containers, as canned salmon has reference to the shipment as a whole, and to authorize condemnation it is not necessary to prove that each individual can is adulterated.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Article.]

2. **Statutes ⊚⟶208—Definition of word used in statute determined from context.**

The best source from which to determine the definition of a word as used in a statute is the statute itself.

3. **Food ⊚⟶2—Food and Drugs Act not strictly construed.**

The rule of strict construction does not apply to statutes, like Food and Drug Act June 30, 1906 (Comp. St. §§ 8717–8728), designed to promote the public health or safety.

4. **Statutes ⊚⟶47—Food and Drugs Act held not invalid for uncertainty; "adulterated food."**

Provisions of Food and Drugs Act June 30, 1906 (Comp. St. §§ 8717–8728), prohibiting sale or shipment in interstate commerce of "adulterated food," defined in part as food containing a "decomposed substance," *held* not invalid because the act fails to definitely specify the extent to which decomposition must have progressed to bring an article within the prohibition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adulterate—Adulteration.]

5. **Food ⊚⟶6—"Decomposed," as used in Food and Drugs Act, defined.**

The word "decomposed," as used in section 7 of Food and Drugs Act June 30, 1906 (Comp. St. § 8723), means more than the beginning of decomposition; it means a state of decomposition.

6. **Food ⊚⟶24—To authorize condemnation of adulterated food, proof that it is injurious to health not essential.**

In a proceeding by the United States for condemnation of adulterated food, proof that it is injurious to health is not required.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Proceeding by the United States for condemnation of 1,974 cases of canned salmon; A. O. Andersen & Company, claimant. Judgment in directed verdict for claimant, and the United States brings error. Reversed and remanded.

This is a proceeding by libel under the Pure Food and Drugs Act (34 Stat. 768 [Comp. St. §§ 8717–8728]) for the condemnation of 1,974 cases of canned salmon. The proceeding is based on the following provision of section 7 of the act (Comp. St. § 8723): "That for the purposes of this act an article shall be deemed to be adulterated: * * * In the case of food: * * * Sixth. If it consists in whole or in part of a filthy, decomposed, or putrid animal or

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vegetable substance, or any portion of an animal unfit for food, whether manufactured or not, or if it is the product of a diseased animal, or one that has died otherwise than by slaughter." The case was tried before a jury on the demand of the government, as provided in section 10 of the act (Comp. St. § 8726).

It appeared from the testimony on the part of the government that 408 cans were selected at random from 408 of the 1,974 cases on three different occasions, 24 cans in the first lot, 192 cans in the second lot, and 192 cans in the third lot. The chemist who made the analysis of the first lot of 24 cans was not available as a witness, and there is no evidence in the record as to their quality or condition; 144 cans of the second lot were first analyzed, and these were found to contain 28 putrid or tainted cans and 18 stale cans. The remaining 48 cans of the second lot were later analyzed and found to contain 8 putrid or tainted cans and 1 stale can. The third lot of 192 cans was also analyzed, and was found to contain 35 putrid or tainted cans and 12 stale cans. A putrid or tainted can is one containing rotten and decayed salmon, whose odor is offensive to the smell. A stale can is one plainly disclosing the beginning of decomposition, but not in so advanced a stage as the putrid or tainted can. It thus appeared that nearly one-fifth of the product analyzed was putrid or tainted, and approximately one-fourth either putrid and tainted or stale. It further appeared that the condition of the salmon was apparent on ordinary inspection when exposed, and that decayed salmon is not injurious to health. The claimant offered no testimony, and upon its motion the court directed the jury to return a verdict in its favor. From the judgment on the verdict the plaintiff sued out the present writ of error.

Thos. P. Revelle, U. S. Atty., and Judson F. Falknor, Asst. U. S. Atty., both of Seattle, Wash.

Otto B. Rupp and Kerr, McCord & Ivey, all of Seattle, Wash., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge (after stating the facts as above). [1] The court below directed a verdict in favor of the defendant in error upon the ground that the article of food referred to in the statute is the single or individual can of salmon, and not the entire case or lot. If this interpretation of the statute is correct, the government of course failed in its proof, and will of necessity meet the same fate in every other case of this kind, unless it is able to prove that each and every part and parcel of the food product is adulterated within the meaning of the law. Is this a correct interpretation of the statute?

"The ordinary definition of the word 'article' is an extremely comprehensive one. In the primary meaning, as given in the dictionaries, it designates one thing of many, one item of several, a portion of complex whole. The best source, however, to which we should apply to determine the definition of a word used in a statute is the statute itself." Junge v. Hedden (C. C.) 37 Fed. 197; Id., 146 U. S. 233, 13 Sup. Ct. 88, 36 L. Ed. 953.

[2, 3] The meaning of the word "article" must therefore be gathered from a consideration of the entire act, and we may add in this connection that the rule of strict construction invoked by the defendant in error has little or no application to statutes designed to promote the public health or public safety. Section 1 of the act (Comp. St. § 8717) prohibits the manufacture within any territory or the District of Columbia of any article of food or drugs, adulterated or misbranded with-

in the meaning of the act; section 2 (Comp. St. § 8718) prohibits the introduction of any such article into any state or territory or into the District of Columbia from any other state or territory or the District of Columbia, or from any foreign country; section 6 (Comp. St. § 8722) defines adulteration, and section 10 (Comp. St. § 8726) prescribes the procedure for the condemnation. In all of these sections we are convinced that the word "article" is used in its broad and comprehensive sense, and has reference to the food product, not to the smallest individual container. Any other construction would defeat the entire purpose of the law. If the contention of the defendant in error is sound, it is subject to a fine of not exceeding $200 for each can of salmon introduced into the state, and to a fine of not exceeding $300 for each subsequent offense. Against such a claim on the part of the government, or such a construction of the statute, we think the defendant in error would have just and ample grounds for complaint.

[4] The defendant in error seeks to uphold the judgment on other grounds. First, it is urged that decomposition sets in immediately after the death of animals or fish; that a literal construction of the act would exclude from interstate commerce all canned fish and meat products; that for this reason the court must hold that Congress intended to prohibit the introduction into interstate commerce of products containing an unreasonable amount or quantity of decomposed matter only; and that the statute as thus construed is void for uncertainty, under the decision in U. S. v. Cohen Grocery Co., 255 U. S. 81, 41 Sup. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045, and kindred cases. This argument is more specious than sound.

[5] Decomposition may begin where life ends, but meat or fish is not decomposed at that early stage. Decomposed means more than the beginning of decomposition; it means a state of decomposition, and the statute must be given a reasonable construction to carry out and effect the legislative policy or intent. Answering a similar contention in U. S. v. Two Hundred Cases of A. T. Catsup (D. C.) 211 Fed. 780, the court said:

"It is argued for the claimant that, since the presence of bacteria, mold, and yeast in any quantity is evidence of decomposition or the process of decomposition, and there is no fixed standard by which it can be determined when a product has reached such a stage of decomposition as to 'consist in whole or in part of filthy, decomposed, or putrid vegetable substance,' the government cannot prevail. I infer from the testimony of the experts that it would be difficult, if not impossible, to fix any arbitrary standard by which the question could be determined, as it depends upon so many contingencies. In any event, no such standard has been fixed, in the absence of which each case must be determined on its own facts, and when it appears, as in this case, that the product is so far decomposed as to be unfit for food, it comes within the letter and spirit of the law."

[6] That case answers the further contention on the part of the defendant in error that adulterated salmon is not injurious to health or dangerous to life:

"It was also urged that, since there is no proof that the product in question would be injurious to health, a verdict should be ordered in favor of the claimant; but I do not understand that such proof is necessary or required under the provisions of the Food and Drugs Act, on which this proceeding is based."

It appeared from the cross-examination of the government witnesses that they have heretofore suffered canned salmon containing a small percentage of filthy, decomposed, or putrid matter to pass in interstate commerce unchallenged, but there is no room for controversy over percentages under the statute itself, for it excludes all. Of course, where the entire product is not inspected or tested, the proof must go far enough to satisfy the court or jury that the adulteration extends to the whole product sought to be condemned. And while a small percentage of adulteration, found only in a small percentage of the product, might not and would not ordinarily satisfy the court or jury that the whole product is adulterated, yet in a case like this, where the jury might properly infer or find that approximately one-fifth of the entire product was unfit for human consumption, and that the adulteration extended to the entire product, no such question can arise.

It is further argued that the court should not destroy 1,600 cases of good salmon because 400 cases of the same lot are found to be adulterated. In answer to this we need only say that destruction does not follow condemnation as a matter of course. Section 10 of the act provides for the restoration of the goods on payment of the costs and the giving of a sufficient bond to the effect that the articles will not be sold or otherwise disposed of contrary to the provisions of the act. Under this provision the defendant in error may, and will doubtless be permitted to, separate the good from the bad, and the burden of so doing should rest upon it, and not upon the government or the ultimate consumer. If it cannot do this, it is its own misfortune, and it must suffer the consequences.

The judgment of the court below is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.