## UNITED STATES v. SWIFT & CO. et al.

### Civ. A. No. 216.

District Court, M. D. Georgia, Macon Division.

Dec. 31, 1943.

T. Hoyt Davis, U. S. Atty., and Chas. W. Walker and Henry S. Barnes, Asst. U. S. Attys., all of Macon, Ga., for plaintiff.

Neal J. Huff, of Chicago, Ill. (Jones, Jones & Sparks, A. O. B. Sparks and Chas. M. Cork, all of Macon, Ga., of counsel), for defendants.

DEAVER, District Judge.

After having heard the evidence and argument of counsel, I make the following findings of fact:

1. Swift & Company is a corporation with an office, agency, and place of business in Macon, Bibb County, Georgia.

2. Between October 10, 1940 and December 19, 1942, the Macon, Georgia, branch of Swift & Company was engaged in manufacturing butter, some of which was shipped in interstate commerce.

3. During said period Swift & Company shipped in interstate commerce butter manufactured from cream, some of which at times had in it rodent hair, feather parts, flies, maggots, and other such filth, and some of which was decomposed and contained mold.

4. The pure and clean cream in the process of manufacture was mixed with the decomposed cream and the cream which contained mold, rodent hair, feather parts, flies, maggots and other such insect filth, and all passed together through the filters, was then pasteurized through the same pasteurizer, held in the same storage vats, and churned together in the same churn.

5. The plant itself is sanitary and the equipment is standard and satisfactory.

6. Some of the butter manufactured from said cream, in spite of filtration through standard filters, contained insect fragments and, in minute quantities, substances which came from broken or partially dissolved insects, and materials which had been a part of the decomposed cream, and mold in such quantities that in ten instances out of fourteen, where the butter was microscopically

examined for mold, 100% of the microscopic fields examined by the Wildman Method were found to contain mold.

7. There is a general correlation between the microscopic mold parts found in butter and the quality of the cream from which the butter is produced. The presence of microscopic mold in butter in excessive quantities may be accepted as an indication that the cream from which the butter was made either contained filth or was to an extent decomposed. Mold in butter, therefore, is relevant evidence to be considered along with all the other evidence as to the condition of the cream, but it is not necessary in this case to find just what weight should be given to such evidence.

8. Such butter so produced by Swift & Company at its Macon Plant was filthy and unfit for food.

9. Swift & Company, for a number of years, has engaged in a nation-wide program of cream quality improvement and has advocated quality improvement in its dairy products.

10. H. N. Bates, the Macon Manager of Swift & Company during most of 1942, failed to carry out fully the instructions of the management of Swift & Company with regard to the cream quality improvement program in the State of Georgia and the making of mold tests upon the cream from which butter was made at the Macon plant.

11. In October 1942, partially as a result of requests on the part of Swift & Company, the newly organized Dairy Department of Georgia Agricultural College began to interest itself in a cream quality program within the State of Georgia, and in the latter part of that year, also partially through the efforts of Swift & Company, the Georgia Butter Manufacturers' Association was organized and began to participate in a general program of cream quality improvement within the State.

12. After the inception of such program, experts and other representatives of Swift & Company's Cream Improvement Department did active field work in furtherance of cream quality improvement in Georgia.

13. As a result of all of these efforts, the quality of cream being received at the Macon plant of Swift & Company in the latter part of 1943 and the butter produced during that period showed a marked improvement over that produced at the times referred to in the complaint. The butter now scores 89 and 89½.

14. W. W. Joyner, the present Manager of the Macon plant of Swift & Company, has actively participated in this field work and in the Georgia cream quality improvement program.

15. With a continuation of the work being done by the University of Georgia and the members of the Butter Industry of Georgia, continued improvement in cream quality should result and a higher quality of commercial butter be produced in the State of Georgia, especially if they had the cooperation of the State Agricultural Department. However, it does not appear from the evidence that the State Agricultural Department is taking any active part in the Georgia cream quality program.

16. Cream used at Swift's Macon plant is produced in the main by small producers scattered over a wide area. It is held generally for about a week before it is delivered to the plant. The conditions under which it is produced and held are such that almost inevitably a large part of it will contain insects and become to some extent decomposed. Without the full cooperation of the State Agricultural Department, it is not likely that sufficient pure clean cream can be had from which to make butter in commercial quantities lawful to be shipped in interstate commerce. If all the cream in the state went to interstate shippers of butter, they could require the production of clean cream simply by rejecting all bad cream. But as long as bad cream subject to be rejected by interstate manufacturers can be sold to intrastate manufacturers, the cream situation will probably remain bad. At such time as state law, strictly enforced, may require a high standard for cream, no bad cream can be sold in the state and then conditions of production and manufacture will change. Until that time arrives Swift & Company cannot force the production of clean cream by any amount of good faith or effort and, while the cream quality program, if continued, will no doubt improve cream conditions, it will not likely cure them. These findings are made only as touching the necessity for an injunction and as a basis for the exercise of a discretion in granting or denying an injunction.

### Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of this case.

2. Congress intended that the word "filthy", as used in the Act, should be construed to have its usual and ordinary meaning, and should not be confined to any scientific or medical definition.

3. It is not necessary, in this case, to adjudicate the legal effect of mold alone in butter.

4. In spite of the improvement which has been shown in the quality of cream produced in Georgia and of the butter now being manufactured at the Macon plant of Swift & Company, it does not appear from the evidence that, under the present conditions existing in the Georgia Cream Industry, other and further adulterations can adequately be prevented by the defendant, Swift & Company. Particularly may that be true so long as the State Agricultural Department takes no part in the program.

5. The butter referred to in the findings of fact was adulterated within the meaning of Title 21 U.S.C.A. § 342(a) (3), in that it consisted in part of a filthy and decomposed substance, and was unfit for food.

6. Plaintiff is entitled to an injunction as prayed.

### Judgment

Wherefore, it is considered, ordered and adjudged that:

1. The defendants, H. N. Bates and Swift and Company, a corporation, all of its officers, representatives, agents, employees and servants, and all persons acting or claiming to act on behalf of or under the defendants, be and they are perpetually enjoined and restrained under the provisions of Sec. 332, U.S.Code, Title 21, 21 U.S.C.A. § 332, from shipping in interstate commerce, in violation of Sec. 331 and Sec. 342(a) (3), U.S.Code, Title 21, 21 U.S.C.A. § 331, 342(a) (3), adulterated butter manufactured or to be manufactured in its Macon, Georgia, plant.

2. Jurisdiction of this cause is retained for the purpose of enforcing or modifying this decree, and for the purpose of granting such additional or supplemental relief as may hereafter appear necessary or appropriate.

3. The defendant, Swift & Company, shall pay all costs involved in this proceeding.