# UNITED STATES v. LAZERE.

## No. 190.

District Court, N. D. Iowa, W. D.

Sept. 22, 1944.

T. E. Diamond, U. S. Dist. Atty., and Franklin E. Gill, Asst. U. S. Dist. Atty., both of Sioux City, Iowa, for plaintiff.

Carlos W. Goltz and Frank J. Margolin, both of Sioux City, Iowa, for defendant.

GRAVEN, District Judge.

Application for temporary injunction under Federal Food, Drug, and Cosmetic Act. In this the United States asks for a temporary injunction against the defendant, Mose A. Lazere, under 21 U.S.C.A. § 332, 21 U.S.C.A. § 331(a) and 21 U.S.C.A., § 342(a) (3) and (4). Evidence was presented at some length in behalf of both parties.

The defendant has for some years been the owner and operator of a wholesale bakery business carried on at 815 West 7th Street, Sioux City, Iowa. The great bulk of his trade is in the State of Iowa. However, he for some years past and at the present time ships about five per cent of his production in interstate commerce. The interstate commerce shipments are made to patrons residing in South Dakota.

The defendant for sometime has been the subject of concern to the inspectors under the Federal Food, Drug, and Cosmetic Act. On May 15 and 16, 1944, Ralph L. Spink, one of those inspectors, inspected the premises. The building in which the defendant's operations are carried on is a one-story building. It includes, among other rooms, a storage room where flour, sugar and salt are stored, and working rooms where the bakery products are prepared. In the storage room that inspector found a large number of sacks of flour which had been gnawed into by rodents, and a large number which had been contaminated by urine and excreta from the rodents. On a number of sacks of flour were found rodent excreta pellets numbering from one to fifty. A number of sugar sacks had been gnawed into by the rodents, and in one sack of sugar was found a mouse nest with several baby mice in it. In an elevator used to convey flour several live weevils were found. Cockroaches were found in a can of glucose, and around fifty cockroaches were found in the working room in an unused cooler. In the working room rodent excreta was also in evidence. Cans of fruit and other containers were standing in the work room with covers off and cockroaches were crawling into them. Silver fish bugs were found crawling around the work room. There was a strong odor of sewage in the basement. The general appearance of the work room was unclean. Inspector Spink talked the matter over with the defendant at the time and urged improvement in conditions and made some suggestions. On July 31, 1944, the premises were again inspected by Inspector Spink accompanied by Inspector Hubbell. While improvement had been made in some of the conditions, yet a new undesirable condition manifested itself in regard to flies. The abandoned cooling system which had contained so many cockroaches had been removed. Part of the walls had been painted. Cockroaches were still running around and bugs were crawling on the floor. Cans containing ingredients were standing open. The presence of rodents in the store room was still indicated. Live worms were found crawling in a recent shipment of flour. The fly situation was serious. In the portion where rolls were made each tray had from two to ten flies on it, and one tray had twenty-five flies on it. In other places flies were congregated in numbers running into the hundreds. There were no fly-traps or fly paper for the lessening of the fly population. It appears that immediately across the alley from the premises is an abandoned barn which is a breeding place for rodents, and the defendant has and will always have trouble with rodents as long as the barn is allowed to remain there. The defendant has been attempting to get the City of Sioux City to have the barn removed or destroyed. While some steps have been taken by the City towards that end, the barn is still there. It also appears that the defendant has been greatly handicapped in keeping the premises clean because of shortage of help due to war conditions. The Federal Food, Drug, and Cosmetic enforcement agency caused loaves of defendant's bread which had

been shipped to South Dakota, to be analyzed. An analysis of two different purchases of defendant's bread made in two different places in South Dakota, showed the presence of rodent hairs and insect fragments.

The defendant's contentions in the main are (1) that none of the matters found in the bread are injurious to the health, and that the conditions referred to under which his bakery goods are being produced, are not injurious to health; (2) that he is doing the best he can under the conditions and circumstances.

In 21 U.S.C.A. § 331(a) it is provided:

"The following acts and the causing thereof are hereby ¹prohibited:

"(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded."

In 21 U.S.C.A. § 342(a)(3) and (4), it is provided:

"A food shall be deemed to be adulterated— * * *

"(3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; or (4) if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health."

In 21 U.S.C.A. § 332, it is provided:

"(a) The district courts of the United States * * * shall have jurisdiction, for cause shown, and subject to the provisions of section 381 (relating to notice to opposite party) of Title 28, as amended, to restrain violations of section 331, except paragraphs (e), (f), (h), (i), and (j)."

There were material changes made in the law by the New Federal Food, Drug, and Cosmetic Act of June 25, 1938. The provisions of the new act here noted became effective June 25, 1939, and because of the recent effective date the number of opinions under the new law are not numerous.

The defendant strongly contends that it is necessary for the Government to show that the bakery products of the defendant were injurious to the health. The defendant offered medical testimony to the effect that because of the high heat under which bread is baked that the presence of parts of rodents and bugs in the bread would not injure the health. Medical testimony was also offered to the effect that for the same reason the production of bakery products under the filthy conditions heretofore described would not injure the health. There was further medical testimony that people "could eat mice and not hurt them," and that a person could eat mouse excreta without hurt to health.

It was the rule under the former Federal Food, Drug, and Cosmetic Act that in the case of adulterated food, proof that it was injurious to the health was not essential. Andersen & Co. v. United States, 9 Cir., 1922, 284 F. 542; United States v. Two Hundred Cases of Adulterated Tomato Catsup, D.C.Or.1914, 211 F. 780; United States v. Two Hundred Cases, More or Less of Canned Salmon, D.C.Tex.1923, 289 F. 157. Since the new Act is more stringent as to filthy food than the old act, the defendant's contention that the Government must show that the food in question is injurious to the health cannot be sustained. In the recent case of United States v. Swift & Co., D.C. Ga.1943, 53 F.Supp. 1018, having to do with the meaning to be given to the word "filthy" found in 21 U.S.C.A. § 342(a) (3), on page 1020 of the opinion in 53 F.Supp. it is stated:

"Congress intended that the word 'filthy', as used in the Act, should be construed to have its usual and ordinary meaning, and should not be confined to any scientific or medical definition."

It would also seem plain that the term "insanitary conditions," used in 21 U.S.C.A. § 342(a) (4), should also be construed to have its usual and ordinary meaning.

It is the holding of the Court that the bakery products in question did consist of a "filthy" substance under 21 U.S.C.A. 342(a) (3), and were prepared under "insanitary conditions" under 21 U.S.C.A. 342(a) (4).

It is the claim of the defendant that he should not be enjoined from shipping his bakery products in interstate commerce because he is doing the best he can in view of the difficulty of securing help and in view of the difficulties caused by the abandoned barn in the matter of the rodent problem. While the situation in which the defendant finds himself can

be sympathetically understood, yet it would not be good law or good sense to permit a person to put filthy food substances into interstate commerce, or to permit a person to prepare food for such purpose under insanitary conditions. The Federal Food, Drug, and Cosmetic Act does not provide that parties shall avoid doing such things if it is possible, it provides that it shall not be done at all. A party who cannot prepare proper food products under sanitary conditions must cease putting such products into interstate commerce. It is obvious that in the instant case the defendant cannot comply with the Federal Food, Drug, and Cosmetic Act without a drastic rehabilitation of his premises, and that until such drastic rehabilitation is made that he should be enjoined from shipping or offering to ship in interstate commerce bakery products prepared on the premises in question.