**UNITED STATES v. 1851 CARTONS LABELED IN PART H. & G. FAMOUS BOOTH SEA FOODS WHITING FROSTED FISH et al.**

No. 2960.

Circuit Court of Appeals, Tenth Circuit.

Jan. 8, 1945.

See also 144 F.2d 356.

Bart W. O'Hara, of Denver, Colo. (Thos. J. Morrissey, U. S. Dist. Atty., of Denver, Colo., Tom C. Clark, Asst. Atty. Gen., Vincent A. Kleinfeld, Sp. Asst. to Atty. Gen., and James B. Goding, of Boston, Mass., on the brief), for appellant.

Hyman D. Landy, of Denver, Colo. (Graham Susman, of Denver, Colo., on the brief), for appellee.

Before PHILLIPS and MURRAH, Circuit Judges, and RICE, District Judge.

MURRAH, Circuit Judge.

In pursuance of Section 304(a) of the Federal Food, Drug, and Cosmetic Act of June 25, 1938, 52 Stat. 1040, 21 U.S.C.A. § 301 et seq., the United States instituted a libel of information in the United States District Court for the District of Colorado, seeking condemnation of approximately 1851 cartons of frozen fish, each containing 15 pounds, and allegedly consisting "wholly or in part of a decomposed substance", which had been shipped in interstate commerce from the state of Massachusetts into the state of Colorado. The Booth Fisheries Corporation, as claimant, answered admitting the shipment in interstate commerce, but denying the allegation with respect to adulteration. Upon facts which are conclusive here the trial court

found that approximately 6% of the entire shipment consisted of decomposed substance, but dismissed the libel on the grounds that it was not "sufficiently decomposed" to be unfit for human consumption, and therefore was not "adulterated" within the meaning and purposes of the Act. The Government has appealed.

One of the declared purposes of the Federal Food, Drug and Cosmetic Act is to prohibit the movement in interstate commerce of adulterated and misbranded foods, drugs, devices and cosmetics. United States v. Dotterweich, 320 U.S. 277, 280, 64 S.Ct. 134; McDermott v. Wisconsin, 228 U.S. 115, 128, 33 S.Ct. 431, 57 L.Ed. 754, 47 L.R.A.,N.S., 948, Ann.Cas.1915A, 39; Hipolite Egg Co. v. United States, 220 U.S. 45, 54, 31 S.Ct. 364, 55 L.Ed. 364. To effectuate that purpose the Act prescribes injunctive remedies, Sec. 302(a) (b), and criminal penalties, Sec. 303(a) (b) (c), for violations, and in addition thereto (subject to enumerated exceptions and limitations) specifically authorizes the seizure and condemnation of any "adulterated" food which is introduced or received in interstate commerce by a libel proceeding in any district court within the jurisdiction of which the adulterated food is found, Sec. 304(a).

Section 402 of the Act pertinently provides that a food shall be deemed to be adulterated "if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food", and the sole question presented by this appeal is whether frozen fish in 15 pound cartons found to consist of approximately 6% decomposed substance is adulterated and therefore subject to condemnation under the Act.

The trial court held in substance that although the product seized consisted wholly or in part of a decomposed substance it was nevertheless fit for human consumption and was therefore not adulterated within the meaning of the statutory definition and the same argument is made here in support of the trial court's judgment.

We cannot agree with the trial court's interpretation of the statutory definition of "adulterated" food. Before the amendment of June 25, 1938, sub-section 6 of section 7 of the original Act of June 30, 1906, 34 Stat. 768, 21 U.S.C.A. § 8, subd. 6, provided that an article should be deemed to be adulterated "if it consists in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance, or any portion of an animal unfit for food * * *." Giving effect to the objects and purposes of the legislation, the courts have uniformly held that when a food consisted "in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance" its interstate shipment was prohibited whether otherwise considered as fit for human consumption or not. United States v. Two Hundred Cases of Adulterated Tomato Catsup, D.C., 211 F. 780, 782; Andersen & Co. v. United States, 9 Cir., 284 F. 542; United States v. Krumm, D.C., 269 F. 848; United States v. Two Hundred Cases of Canned Salmon, D.C., 289 F. 157; Knapp v. Callaway, D.C., 52 F.2d 476; United States v. One Hundred Thirty Three Cases of Tomato Paste, D.C., 22 F.Supp. 515.

Notwithstanding this strict construction of the language employed of which Congress was undoubtedly aware, the amendment of 1938, Sec. 402, not only impliedly approved this construction of its language but strengthened it by adding words which leave no doubt of its intention to free interstate commerce of any food if it consists "in whole or in part of any filthy, putrid, or decomposed substance." The added clause "or if it is otherwise unfit for food" is in the disjunctive and does not condition, qualify, or obscure the plain meaning of the whole sentence when considered in its context. United States v. 184 Barrels Dried Whole Eggs, D. C., 53 F.Supp. 652. This view is supported by the general purpose of the amendment to extend the range of control over impure and adulterated food and drugs moving in interstate commerce. United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134.

According to the conclusive findings of the trial court each carton of fish seized consisted in part of fish in a decomposed state and it was necessary to thaw the fish in each carton in order to separate the decomposed substance from the wholesome part. It is thus clear that the product in question comes within the interdiction of the Act and the judgment of the trial court is reversed.