**UNITED STATES v. ROMA MACARONI FACTORY et al.**

No. 31035.

District Court, N. D. California, S. D.

Dec. 10, 1947.

Edgar R. Bonsall, of San Francisco, Cal., for Government.

Thomas Ryan, of San Francisco, Cal., for defendant.

HARRIS, District Judge.

In this matter the grand jury found its indictment charging the defendants Roma Macaroni Factory, a corporation, and Albert Martinelli, superintendent, and Dominic Louis Gerbo, manager, as defendants, with the alleged violation of the Federal Food, Drug, and Cosmetic Act, Title 21 U.S.C.A. § 331. It appears from the indictment, in the charging part thereof, that the defendants did on or about the 27th day of December, 1946, in violation of the Federal Food, Drug, and Cosmetic Act, unlawfully cause to be introduced, and deliver for introduction, into interstate commerce at San Francisco, State of California, for delivery to Reno, State of Nevada, consigned to Brunetti & Patrone, a number of cases, each case containing paste, a food within the meaning of the Act.

It is further charged that the defendants caused to be introduced and delivered for introduction into interstate commerce, food adulterated within the meaning of the Act, in that it consisted in part of a filthy substance, by reason of the presence in said food of insect fragments, rodent hair fragments, hair resembling rodent hair and unidentified hair.

It is further charged that when the food was caused to be introduced and delivered for introduction into interstate commerce, it was adulterated and that it had been prepared and packaged, under unsanitary

conditions, whereby it may have become contaminated with filth.

Further, it appears, from the indictment, that on June 3, 1946, the Roma Macaroni Factory and Albert Martinelli and Dominic Louis Gerbo were convicted in this court of violation of the Federal Food, Drug, and Cosmetic Act, Docket No. 301256, which conviction had become final before the violation hereinbefore alleged was committed.

The defendants before the bar entered their pleas of not guilty to the charges, and each of them, embraced in the indictment. It appears that in connection with said prior violation the defendants, and the corporation in June 1946, entered pleas of nolo contendere. The defendant corporation was fined at that time in the amount of $1250, and the defendants individually a nominal sum.

The instant case proceeded to trial before a jury under the pleas of not guilty and evidence was adduced. Finally in the late stages of the trial the defendant, Gerbo, under advice of counsel, requested the court for change of plea from not guilty to that of guilty. The court accepted the plea.

In addition, at that juncture, the Roma Macaroni Factory a corporation, was permitted to change its plea of not guilty to guilty, to the several charges embraced in the said indictment. Upon motion of the defense counsel, the court entertained a motion for dismissal as to Albert Martinelli; there being no opposition on the part of the Government, Albert Martinelli was duly dismissed.

The crucial point, in the opinion of the court, is the date embraced in the indictment, to-wit, December 27, 1946. Notwithstanding a prior conviction in June 1946, and no doubt having received an admonition by the court that any further activities would result in more stringent penalties, the defendants saw fit to continue in the operations as they had been conducted prior to June, 1946, for it appears in the testimony elicited through Inspector McConnell that on December 27, 1946, or approximate thereto, and at the time of his inspection, the plant was in a filthy condition.

Evidences of vermin excrement, and the like were present and in addition the chemical analyses produced before the court, and testified to more recently by the Government expert, demonstrate that these filthy substances found their way into the finished product in such proportions as to justify any fact finding body in concluding that the plant had not been remedied as a result of, or in the light of the prior conviction.

In short, these defendants, in the opinion of the court, saw fit to speculate to some degree: this is confirmed and reaffirmed by the testimony of Dr. Lowy, produced by the defendant in mitigation, who testified that the condition on or about December 27, 1946, or at the time of the inspection of Mr. McConnell, demonstrated negligence.

He was honest with the court, and perforce he had to be honest, because inevitably that was the only conclusion to be reached.

■ Counsel for the defendant has pointed out that the element of intent is not a prime requisite. It is not a matter of knowledge, or lack of knowledge. In examining the authorities the court has considered among others, Triangle Candy Co. v. United States, 9 Cir., 144 F.2d 195, 155 A.L.R. 903, wherein it appeared that in the production of candy, insanitary conditions prevailed; there were present in the candy rodent hairs, and the like. The court said that intent is no part of the crime with which defendants were charged. If they have introduced candy into interstate commerce, and if it is adulterated, they are guilty regardless of their intent or lack of knowledge as to adulteration.

Similarly, in United States v. Swift & Co., D.C., 53 F.Supp. 1018, it appeared that servants of the company had, in the manufacture of butter, permitted adulteration to creep into the product. The underlying philosophy, as I read the authorities is the ultimate protection of the unwary purchaser and innocent consumer.

The very reason for the enactment in 1906 of the Food and Drugs Act and its avowed purpose, was that beneficent accomplishment. Title 21 U.S.C.A. § 1, et seq.

Congress saw fit to amend the act in 1938 and it is apparent that the criminal sanctions were increased. That is quite evident from a reading of the statute, wherein it appears, in part, that upon a second offense (Section 333, Title 21 U.S.C.A.), any person who violates any of the provisions of Section 331 of said Title shall be guilty of a misdemeanor, and shall on conviction thereof be subject to imprisonment for not more than one year, or a fine of not more than $1000, or both such imprisonment and fine; but if the violation is committed after a conviction of such a person under that section, such person shall be subject to imprisonment for not more than three years or a fine of not more than $10,000, or both such fine and imprisonment. Congress had in mind the imposition of that rather severe criminal penalty to avoid the consequences of that type of conduct which we have presently reviewed.

As I have indicated, and as the testimony developed, these defendants, at least the defendant Gerbo, who has entered a plea of guilty, in the main, may be properly charged with the exercise of a studied indifference towards the consequences. We have this belated effort on his part to make whole the harm and injury that has been done. It is perfectly obvious, and I repeat myself, that between the first violation and December, 1946, very little if anything had been done. The evidence points unerringly to all these facts.

■ In searching for authority with some reasonable analogy to the case at bar, I have considered United States v. Lazere, D.C., 56 F.Supp. 730, at pages 732, 733; and at 733, the Court used very significant language which I might paraphrase. It would not be good law, or good sense, to permit a person to put filthy food substances into interstate commerce, or to permit persons to prepare food for such purpose under unsanitary conditions. The Federal Food, Drug, and Cosmetic Act does not provide that parties shall avoid doing such things, if it is possible; it provides that it shall not be done at all. A party who cannot prepare food products under sanitary conditions must cease putting such products into interstate commerce.

■ In the Lazere case it appeared that in a number of sacks were found rodent excretion, pellets, and a number of sugar sacks had been gnawed; also the urine was present, as in the case at bar. In addition, in that case the court defined "filthy" within the contemplation of the Act. Congress intended that the word "filthy" as used in the Act should be construed to have its usual and ordinary meaning, and should not be confined to any scientific or medical definition.

■ To some extent, it has been a rather disagreeable experience for the court, and I know the jurors felt likewise in listening to the narrative testimony. The facts were revolting.

No doubt the premises were never equipped or were never suitable for the manufacture of food products. Dr. Lowy in his testimony again was extremely honest with the court, as he should have been, stating "Perhaps they had done the best they could."

We have the defendant Gerbo and the defendant corporation gambling and speculating with the hope, and no doubt expectation, that ultimately some court somewhere in the land would impose a modest fine and blessing, and they would go forth rejoicing. That is not the position of the court in this case.

Would the defendant Gerbo appear before the bar, and someone on behalf of the corporation?

As to the defendant Dominic Louis Gerbo, the court will refer the matter to the probation officer for a pre-sentence report. The defendant Dominic Louis Gerbo is remanded to custody.

With respect to the Roma Macaroni Factory, the judgment of the court is that the Roma Macaroni Factory, a corporation, pay a fine to the United States Government in the maximum amount of $10,000.