UNITED STATES v. 44 CASES, ETC., VIVIANO SPAGHETTI WITH CHEESE.

UNITED STATES v. 400 CASES, ETC., VIVIANO SPAGHETTI WITH CHEESE.

UNITED STATES v. 1560 CASES, ETC., VIVIANO SPAGHETTI WITH CHEESE.

UNITED STATES v. 354 CASES, ETC., CANNED SPAGHETTI.

Civ. Nos. 2179.

United States District Court
E. D. Illinois.
Nov. 12, 1951.

Ray J. O'Donnell, U. S. Atty. Southern District of Ohio, Cincinnati, Ohio, William W. Hart, U. S. Atty. Eastern District of Ill., E. St. Louis, Ill., for plaintiff.

John S. Leahy, Jr., St. Louis, Mo., Chester Farthing, Belleville, Ill., for defendant.

WHAM, Chief Judge.

The above consolidated cases have been tried on their merits in this court by virtue of an order of consolidation and transfer entered by the United States District Judge for the Southern District of Ohio entitled and reading as follows:

"United States of America
In The United States District Court
For The Southern District of Ohio
Western Division.

| | |
|---|---|
| "United States of America<br><br>v.<br><br>44 Cases, more or less, of an article labeled in part 'Viviano Spaghetti With Cheese.' | No. 2516 (Civil)<br>FDC No. 30143.<br>In the District Court of the United States, for the Southern District of Ohio, Western Division, at Cincinnati. |
| "United States of America<br><br>v.<br><br>400 Cases, more or less, of an article labeled in part 'Viviano Spaghetti With Cheese' · | No. 2517 (Civil)<br>FDC No. 30144.<br>In the District Court of the United States, for the Southern District of Ohio, Western Division, at Cincinnati. |
| "United States of America<br><br>v.<br><br>1560 Cases, more or less of an article labeled in part 'Viviano Spaghetti With Cheese' | No. 2518 (Civil)<br>FDC No. 30142.<br>In the District Court of the United States, for the Southern District of Ohio, Western Division, at Cincinnati. |
| "United States of America<br><br>v.<br><br>354 Cases, more or less, of Canned Spaghetti. | No. 10052<br>In the District Court of the United States, for the Eastern District of Michigan, Southern Division, at Detroit. |

"Order

"The motion of Viviano Foods, Inc., intervenor herein and claimant of the property that is libeled in the above captioned cases, coming on for hearing and the Court being advised that a similar motion has been filed in a libel case pending in the Eastern District of Michigan, Southern Division, at Detroit, Michigan and it appearing to the Court that the United States of America, through United States District Attorney is not opposed to the granting of said motion, and it appearing to the Court that in the cases pending in this jurisdiction and in the jurisdiction of the Eastern District of Michigan, Southern Division, the same claimant is involved, and it appearing to the Court that the claimant's principal place of business is in the City of St. Louis, State of Missouri, and it appearing to the Court that by granting the motion herein, it will effect an economy of time and traveling and other expenses, and it appearing to the Court that the United States District Court for the Eastern District of Illinois, sitting at the City of East St. Louis, State

of Illinois, is a district located within reasonable proximity to the claimant's principal place of business,

"Now, Therefore, it is ordered, adjudged and decreed that the motion for consolidation and transfer of said causes of action now pending in this Court and in the United States District Court for the Eastern District of Michigan, Southern Division at Detroit, Michigan, are herewith consolidated and herewith transferred for trial to the United States District Court for the Eastern District of Illinois, sitting at the City of East St. Louis, State of Illinois.

"It is further ordered that the Clerk of the United States District Court for the Southern District of Ohio, Western Division, promptly transmit a certified copy of this order and the records in the above entitled action, to the Clerk of the United States District Court for the Eastern District of Illinois, pursuant to Section 21 U.S.C. 334(f) (1).

"S/ John H. Druffel<br>United States District Judge."

The F.D.C. number assigned each libel except the last appears in the title to said order and the F.D.C. number of the last is 30178. For purposes of convenience its F.D.C. number will be used to identify the particular case and shipment to which reference may be made in this memorandum.

The principal place of business of the claimant, Viviano Foods, Inc., a corporation, is in St. Louis, Missouri, and this district is a district of reasonable proximity to the claimant's principal place of business.

The libels are based wholly on the federal statute commonly known as the Federal Food, Drug and Cosmetic Act, Title 21 U.S.C.A. § 301 et seq. This Act rests upon the constitutional power of Congress to regulate interstate commerce, and seeks to keep interstate commerce free from deleterious, adulterated and misbranded articles of specified types to the end that public health and safety might be advanced. United States v. Walsh, 331 U.S. 432, 67 S.Ct. 1283, 91 L.Ed. 1585.

The applicable provisions of the Act are set out as far as deemed necessary for the sake of clarity. The type of article here involved is food which is defined in the Act as "articles used for food or drink for man or other animals". 21 U.S.C.A. § 321. 21 U.S.C.A. § 334 provides: "(a) Any article of food * * * that is adulterated * * * when introduced into or while in interstate commerce * * * shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States within the jurisdiction of which the article is found:"

21 U.S.C.A. § 342(a) provides:

"A food shall be deemed to be adulterated—

"(a) * * * (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; or (4) if it has been prepared, packaged, or held under insanitary conditions whereby it may have become contaminated with filth".

In each of the libels it is charged that the article is adulterated within the meaning of section 342(a) (3), Title 21 U.S.C.A., in that it consists wholly or in part of a decomposed substance by reason of presence therein of decomposed tomato material; and within the meaning of section 342(a) (4) in that it has been prepared under insanitary conditions whereby it may have become contaminated with filth. In libels F.D.C. No. 30144 adulteration is also charged within the meaning of section 342(a) (3) by reason of the presence in the article of a filthy substance by reason of the presence therein of maggots and in F.D.C. No. 30178 by reason of the presence in the article of a filthy substance by reason of the presence of fly eggs and maggots.

By stipulations of counsel it was agreed that the four articles of food involved were shipped in interstate commerce at the time, in the manner, and to the consignees, as set out in the libels and that samples identified by number, dates and initials were taken by the government from

each shipment before and after seizure. The samples taken were representative of each shipment. The only disputed questions of fact remaining in controversy and for determination in each libel were (1) whether the seized article consisted in whole or in part of any filthy or decomposed substance and (2) whether the article was prepared under insanitary conditions whereby it may have become contaminated with filth, as charged in the libel. The questions of law in each libel are (1) whether any filthy or decomposed substance found in the article, if any, constituted adulteration within the meaning of said section 342(a) (3) and whether the conditions under which the article was prepared, as shown by the evidence, were insanitary conditions whereby it may have become contaminated with filth so as to contitute adulteration within the meaning of section 342(a) (4).

The articles of food seized in each case consisted of cans labeled in part "Viviano Finest Quality Contents 15¾ Ozs Net Spaghetti With Cheese". The evidence showed that the articles of food consisted of spaghetti with cheese and tomato sauce prepared and packaged in the plant of Viviano Foods, Inc., St. Louis, Missouri; that the interstate shipments were made from said plant as follows: In F.D.C. No. 30143, on or about October 9, 1950; in F.D.C. No. 30144, on or about October 9, 1950; in F.D.C. No. 30142, on or about September 8, 1950 and in F.D.C. No. 30178 on or about September 30, 1950. It was stated by counsel for the government during the trial that there is no contention on the part of the government that the libeled products were or would be injurious to the health of a consumer.

The testimony of Edwin J. Balfing, a Missouri state food inspector, was that he visited the plant in question on October 11 and again on October 13 to inspect it for sanitation. After describing the layout of the plant and method of operation he testified that on October 11 he was in the plant for two hours; that the plant occupied two floors of the building and part of the second floor was used as living quarters; that the windows, doors and openings in the plant were unscreened; that there were many flies and nothing to keep the flies from the ingredients; that the floor was wet with dripping sauce at the packing table; that paint was peeling from the ceiling against which cardboard that did not cover the table was used for protection; that a cat was on the premises and children playing around; that the processing and canning machinery were unclean; that he talked to John Viviano, the manager; that he was at the plant again on October 13 and found conditions the same; that he reported the conditions at the plant to the Federal Food and Drug Administration in St. Louis and on October 16 accompanied federal inspector Henry Hradil on a third trip to the plant.

Henry Hradil, a federal food inspector, testified that he inspected the plant and the operations in the plant on October 16 with state inspector Balfing, made photographs of various parts of the plant, developed the films and made enlargements thereof. These were offered and admitted in evidence over objection that by reason of their enlargement they were inaccurate and over-exaggerated. The objection was overruled as going to the weight to be given the photographs as evidence rather than to their admissibility. Hradil described the building and plant stating that the tomato sauce was manufactured on the second floor; that two other rooms on the second floor were used as living quarters; that furniture was stored in a third space which was separated from the manufacturing space by a wire screen; that he found John Viviano there, also the wives of the two owners and two boys three and four years of age and a colored boy helper; that the heads of the workers were uncovered and the aprons and clothing of the male workers unclean; that salt and sugar were in uncovered containers; that a child playing with a toy on the floor put his toy in the salt which witness removed and handed it back to the child and though the mother cautioned the child he put the toy back in the salt. Hradil corroborated and added to Balfing's testimony concerning the presence of many flies, lack of screens and general uncleanliness. He

testified further as to dirty walls and window sills on which vessels were set, encrustations on containers used in the manufacturing process, two house flies in one of the strainers, and how the drippings of sauce from the table were caught in a vessel unstrained and used again or preserved in a vat for later use; that the tomato boxes showed drippings of soupy materials attracting flies; that Viviano told him he paid 75¢ per bushel for the tomatoes, that he bought good tomatoes, that he did not cut out rotten spots but threw out the tomatoes with rot on them and used only the good ones.

■ Though defense witnesses testified to more favorable conditions at the plant than was disclosed by the government witnesses and produce men supported Viviano's testimony that he bought good tomatoes, the defense testimony fell far short of overcoming the testimony of inspectors Balfing and Hradil. From a preponderance of all the evidence I find that on October 11, 13 and 16, 1950 the conditions at the plant were insanitary whereby the products then being manufactured may have become contaminated with filth such as tomato rot, flies and fly eggs and kindred filth.

■ The insanitary conditions at the plant on October 11, 13 and 16 resulted in most part from conditions of a continuing nature such as lack of screens, flies, dirt on walls and floors, et cetera. The inference is not only reasonable but compelling that the conditions were no less insanitary on the dates when the various shipments here in question were prepared and packaged which I find from the evidence was immediately or within a very few days before the dates of the respective shipments.

Did the libeled articles in each seizure consist in whole or in part of a decomposed substance by reason of presence therein of decomposed tomato material; and did F.D.C. No. 30144 consist in whole or in part of a filthy substance by reason of the presence therein of maggots and F.D.C. No. 30178 by reason of the presence therein of fly eggs and maggots? As to each query, based on a heavy preponderance of the evidence, I find in the affirmative. The government scientists who testified on these points gave the impression of being in all respects highly qualified and responsible witnesses who were seeking to develop the facts as they found them to be. The scientific methods they used were not secret or new or questionable when judged by usual standards but widely recognized by scientific societies, and accepted by the government and by industry as a dependable method to be used in examining foods similar to these for decomposed substances. The government witnesses were widely experienced in examining similar foods for the very purposes that they made the examination of the foods here in question. I am persuaded that I should accept their testimony as true and accurate. The testimony of claimant's expert is entitled to careful consideration because of his high reputation as a scientist and obvious effort to bring the court the true results of his tests and examinations. His findings and conclusions wherein they conflict with or tend to refute the findings and conclusions of the scientists who testified for the government are weakened, however, by his lack of experience in the field of decomposed substances in food and particularly in the field of tomatoes and tomato molds. His testimony fails to overcome that of the government scientists whose testimony amply sustained the case of the government in each of the four libels. The testimony of the government's witnesses that decomposed and filthy substances were found in the samples examined by them is strengthened by the proof of insanitary conditions at the plant that would cause one to expect to find decomposed matter and filth in the product.

■ Section 342(a) (3) prohibits the interstate shipment of food when it consists in whole or in part of filthy, putrid or decomposed substances irrespective of whether it is fit for food or injurious to health. United States v. 184 Barrels Dried Whole Eggs, D.C., 53 F.Supp. 652; United States v. 1851 Cartons, etc., 10 Cir.,

664

146 F.2d 760; Salamonie Packing Co. v. United States, 8 Cir., 165 F.2d 205.

The words in clause· (3) "or if it is otherwise unfit for food" do not modify, limit, or add any additional requirement of proof to the preceding words. United States v. 935 Cases, etc., D.C., 65 F.Supp. 503; United States v. 184 Barrels Dried Whole Eggs, supra.

The word "filthy" as used in the Act is intended to be given its ordinary meaning and not confined to any scientific or ·medical definition. United States v. Swift & Co., D.C., 53 F.Supp. 1018. Likewise, "insanitary conditions" as used in 21 U.S.C.A. § 342(a) (4) should be construed to have its usual and ordinary meaning. United States v. Lazere, D.C., 56 F.Supp. 730.

·From the findings herein and the applicable provisions of the Act and the interpretations placed thereon by the courts I conclude that the articles of food herein libeled were adulterated within the meaning of the Act by reason of the presence therein of decomposed tomato material and in F.D.C. No. 30178 by the presence also therein of filth consisting of fly eggs and maggots and in F.D.C. No. 30144 by the presence also of maggots. I further conclude that the seized articles of food are adulterated within the meaning of the Act by reason of having been prepared and packed under insanitary conditions whereby they may have become and were contaminated with filth.

Counsel for the government are directed to submit, upon notice, proposed findings, conclusions and order pursuant hereto.