## UNITED STATES v. 24 CASES, MORE OR LESS et al.

### No. 474.

United States District Court
D. Maine, N. D.

Nov. 16, 1949.

As Amended Dec. 1, 1949.

Alton A. Lessard, U. S. Atty., Portland, Maine, Edward J. Harrigan, Asst. U. S. Atty., Portland, Maine, for plaintiff.

Nathan W. Thompson, Portland, Maine, for defendants.

CLIFFORD, District Judge.

This is a motion by claimant to dismiss a libel in rem in so far as the libel relates to that part of the libelled goods, consisting of twenty-four cases of canned herring roe. The libel was brought by the United States of America under the Federal Food, Drug and Cosmetic Act, 1938, 52 Stat. 1040, c. 675, 21 U.S.C.A. § 301 and following, for the seizure and condemnation, under section 334 of said Act, of two lots of canned herring roe. These lots contained 181 and 24 cases, respectively, each case containing 24 cans of this product. The libel alleged that both lots were shipped in interstate commerce; that the contents of the 181 case lot were unfit for food, within the meaning of the Act, in that they consisted wholly or in part of a decomposed substance; and that the contents of both

lots were unfit for food, within the meaning of the Act, in that they were of a "tough, rubbery consistency."

A default decree was entered by this Court in this case, on February 9, 1949, condemning both lots of herring roe, and ordering their destruction. By order of this Court filed February 19, 1949, made pursuant to agreement of the parties, the default decree was vacated and the case reinstated to the docket. Thereafter, the claimant, Riviera Packing Company, filed this motion to dismiss the complaint, so far as it relates to the lot consisting of 24 cases.

The only allegation contained in the complaint against the 24 case lot rests on the claim that the product therein contained was of a "tough, rubbery, consistency." By its motion to dismiss the complaint so far as it relates to the 24 case lot, claimant raises the question whether a food product, not otherwise unfit for food, may ever be condemned as unfit for food merely because it is "of a tough and rubbery consistency."

█ The motion to dismiss this portion of the libel should not be granted unless it appears to a certainty that the government could not prevail under any state of facts which could be proved in support of the libel.

Section 304 of the Act, 1938, 52 Stat. 1044, c. 675, § 304, 21 U.S.C.A. § 334, provides for the seizure and condemnation of "any article of food * * * that is adulterated * * * when introduced into or while in interstate commerce."

Section 402(a) (3) of the Act, 1938, 52 Stat. 1046, c. 675, sec. 402(a) (3), 21 U.S. C.A. § 342(a) (3), provides as follows: "A food shall be deemed to be adulterated—(a) * .* * (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, *or if it is otherwise unfit for food*; * * *." (Emphasis supplied.)

The answer to the question raised by the motion at bar is not to be found in any of the cases cited by counsel for the Government or for the claimant.

The claimant's brief, supporting this motion, argues that the man on the street would never interpret or understand the word "adulterated" to include the sense "of a tough and rubbery consistency." The claimant argues that the statutory words "otherwise unfit for food" are intended merely to enlarge the ban of the statute from "filthy, putrid, or decomposed" matter, and to reach only other substances not within that classification but in some other way injurious to health. Finally, claimant urges that toughness is a term peculiarly subject to personal taste and therefore not a proper subject for regulation under the Food, Drug and Cosmetic Act. These points will be considered in order.

█ In its interpretation of the word "adulterated", this Court must be guided by the definition given in the statute. See United States v. Coca Cola Company, 1916, 241 U.S. 265, 36 S.Ct. 573, 60 L.Ed. 995, Ann.Cas.1917C, 487, construing the 1906 Food and Drugs Act, 34 Stat. 768, and the construction placed upon it by the Court. This definition and its construction clearly extend beyond the dictionary meaning of the word, which is "corruption by the addition of a foreign substance."

The statutory phrase "otherwise unfit for food" is general on its face. The Government's brief lays great stress on the policy of Congress, as expressed in the Food, Drug and Cosmetic Act, to protect the consuming public in the purchase of food products. Counsel for the Government cite several cases where the Act has been applied, in carrying out this policy, to condemn food products which contained no filthy, putrid or decomposed substances, nor any other harmful material, but which were characterized by an abnormal odor, taste or color. F.D.C. 12002, 12012, 12090, 12122, 12284, 12299, 12543, and 12591.

█ The case of United States v. 184 Barrels Dried Whole Eggs, D.C.E.D.Wis. 1943, 53 F.Supp. 652, from which claimant quotes extensively, rules that the words "filthy, putrid, or decomposed substance" —which had stood alone in an earlier version of the statute and had been construed

to apply whether or not the decomposed substance made the product injurious to health—lost none of their force by the addition of the word "or if it is otherwise unfit for food". Accord, United States. v. 1851 Cartons, etc., 10 Cir., 1945, 146 F.2d 760. It is the opinion of this Court that the words "otherwise unfit for food", following as they do the word "or", must be construed as having strengthened and enlarged the intended scope of the coverage of the Act.

Toughness was the issue in a recent case in the United States District Court for the District of Oregon, United States v. 298 Cases, etc., Ski Slide Brand Asparagus, 1949, 88 F.Supp. 450. In that case the court considered whether canned center cuts of asparagus were too tough and woody to be fit for food. The case was heard on the merits: the Court himself sampled the product and dismissed the case, ruling that the product was fit for food. Fairly to be understood, but not expressed in his ruling was the assumption that the product could have been so tough as to warrant condemnation as unfit for food.

 It is the opinion of this Court that a food product may conceivably be "unfit for food" by reason of an excessively tough or rubbery consistency; and that a product which is unfit for food for this reason, as for any other, properly falls within the construction of the statute and the policy of the Congress, that such products should be condemned for the protection of the consumer. The issue, whether the product is so tough as to be unfit for food, is solely a factual one, and must be determined by the Court in a trial on the merits.

The question of the standard to be applied in determining the decree of toughness which constitutes an article unfit for food may be somewhat troublesome. As claimant has argued, the question is, in large measure, one of personal taste. Some products are, by their very nature, much tougher to eat than others. The fussy, fastidious, finicky individual might, with disdain, refuse to accept and throw out the product of the claimant, because, to his taste it was too tough and rubbery to eat; yet the case hardened individual who brags he can eat anything, might, with relish, eat and enjoy the product of the claimant. We cannot accept as the standard or test that which might be applied by either one of these two types of individuals.

 In the opinion of this Court, in order for a product to be subject to condemnation as unfit for food, on account of its tough and rubbery consistency, the product must be proved to be so tough and rubbery that the average, normal person, under ordinary conditions, would not chew and swallow it.

It is therefore Ordered, Adjudged and Decreed that

The motion of claimant to dismiss that part of the libel relating to the 24 case lot of canned herring roe be, and is hereby Dismissed.