**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**484 BAGS, MORE OR LESS, etc.,**
**Defendant-Appellee.**
**No. 27781.**

United States Court of Appeals,
Fifth Circuit.
March 17, 1970.

Louis C. La Cour, U. S. Atty., Joan E. Chauvin, Asst. U. S. Atty., New Orleans, La., for appellant, William W. Goodrich, Asst. Atty. Gen., Joanne S. Sisk, Jeffrey B. Springer, Attys., Dept. of Health, Education and Welfare, Washington, D. C., of counsel.

John B. Gooch, Jr., New Orleans, La., George A. McKray, San Francisco, Cal., for appellee.

Before JONES, BELL and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

This case concerns whether molded green coffee is adulterated, within the meaning of the Food, Drug and Cosmetic Act, 21 U.S.C. § 342(a) (3). These 484 bags of coffee beans have been the subject of this litigation for more than four years.

The coffee was imported from Brazil, admitted to the United States, and stored in a warehouse in New Orleans. Three or four days after arrival in September, 1965 it was damaged by water during Hurricane Betsy. In an effort to impede the growth of mold on the beans the consignee had them run through a dryer and resacked. In October, 1965 the government filed a libel against the coffee under 21 U.S.C. § 334, alleging that it was adulterated. Almost three years later the District Court granted summary judgment for the government on the issue of adulteration and ordered the coffee condemned. However, under 21 U.S.C. § 334(d) the court granted the petition of the consignee-claimant for release of the beans in order that they be brought into compliance with the Act.

The beans were burnished, or brushed, in an effort to remove the mold. The government was dissatisfied with the result and filed a motion that the coffee be destroyed. After an evidentiary hearing the District Court found that the beans were fit for food, under the standards of the New York Coffee Exchange, and were neither contaminated nor injurious to health. The court concluded, relying upon United States v. 1500 Cases, Etc., 236 F.2d 208 (7th Cir. 1956), that the degree of decomposition made unlawful by § 342(a) (3) is "one which would, with reasonable certainty, render the article unfit for food." The District Judge ordered that the coffee be exported to a non-coffee producing country, pursuant to 21 U.S.C. § 381(d), and that it not be returned to the United States.

The District Court used an erroneous standard in concluding that the coffee was in compliance with the Act and need not be destroyed. We vacate the decree of the District Court and remand the case for further proceedings.

21 U.S.C. § 342(a) (3) provides that a food is deemed adulterated "if it consists in whole or in part of any filthy, putrid or decomposed substance, or if it is otherwise unfit for food." The District Court read the first clause of the quoted provision as being elucidated by the second so that the amount of decomposition made unlawful thereby is that "which would, with reasonable certainty, render the article unfit for food." 297 F.Supp. at 673. This court, along with others, has long held that the two clauses are independent and complementary, so that a food substance may be condemned as decomposed, filthy, or putrid even though it is not unfit for food, Bruce's Juices v. United States, 194 F.2d 935 (5th Cir. 1952); Salamonie Packing Co. v. United States, 165 F.2d 205 (8th Cir.), cert. denied, 333 U.S. 863, 68 S.Ct. 744, 92 L.Ed. 1142 (1948); United States v. 449 Cases, Etc., 212 F.2d 567 (2d Cir. 1954); United States v. 1851 Cartons, Etc., 146 F.2d 760 (10th Cir. 1945), or condemned as unfit for food even though not decomposed, filthy or putrid, United States v. 24 Cases, Etc., 87 F.Supp. 826 (D.Me.1949). The single case relied upon by the District Court, United States v. 1500 Cases, Etc.,

236 F.2d 208 (7th Cir. 1956), adopts the accepted interpretation reached in the above-cited cases, albeit reluctantly. Thus the District Court's finding that the beans were not unfit for food does not preclude condemnation of them as adulterated.

■ We turn to consideration of the standards to be used in determining if coffee beans are adulterated. The appellee contends that the statute lays down a rule of reason, allowing seizure and condemnation of only foods which deviate from the norm of purity to the extent of going beyond fair and safe standards. We recognize that "It [the first phrase of § 342(a) (3)] sets a standard that if strictly enforced, would ban all processed food from interstate commerce. A scientist with a microscope could find filthy, putrid, and decomposed substances in almost any canned food we eat." United States v. 1500 Cases, Etc., 236 F.2d 208, 210–211 (7th Cir. 1956). But the majority, in fact almost unanimous, rule is that the Act confers the power to exclude from commerce all food products which contain in any degree filthy, putrid or decomposed substances. A. O. Andersen & Co. v. United States, 284 F. 542 (9th Cir. 1922); 338 Cartons, Etc. v. United States, 165 F.2d 728 (4th Cir. 1947); United States v. 233 Tins More or Less, 175 F.Supp. 694 (W.D.Ark.1959); Salamonie Packing Co. v. United States, 165 F.2d 205 (8th Cir.), cert. denied, 333 U.S. 863, 68 S.Ct. 744, 92 L.Ed. 1142 (1948); United States v. 449 Cases, Etc., 212 F.2d 567 (2d Cir. 1954); Developments in the Law—The Federal Food, Drug, and Cosmetic Act, 67 Harv.L.Rev. 632, 644–45 (1954). *Cf.* Dean Rubber Manu-

facturing Company v. United States, 356 F.2d 161 (8th Cir. 1966) (no rule of reason applicable to "drug or device" portions of Act). The opposing view is set out in the dissenting opinion of Judge Frank in United States v. 449 Cases, Etc., 212 F.2d 567, 575 (2d Cir. 1954).

Unjustifiably harsh consequences of a completely literal enforcement are tempered by discretion given the Secretary (now the Secretary of Health, Education and Welfare). He is allowed to adopt administrative working tolerances for violations of which he will prosecute. 21 U.S.C. § 336; United States v. 449 Cases, Etc., 212 F.2d 567 (2d Cir. 1954); Dean Rubber Manufacturing Company v. United States, 356 F.2d 161 (8th Cir. 1966).[1] The courts may accept the administrative tolerance as a proper judicial measure of compliance with the Act. United States v. 1500 Cases More or Less, Etc., 236 F.2d 208 (7th Cir. 1956); United States v. 935 Cases, Etc., 65 F. Supp. 503, 505 (N.D.Ohio 1946).

Part of the government's evidence at the evidentiary hearing, after the claimant had sought to bring the coffee into compliance with the Act, was that it permitted a tolerance of ten per cent moldy beans in coffee, and that the percentage in tested samples of this coffee averaged 15.1.[2] It is undisputed that the claimant had no actual notice of the administrative tolerance and that it had not been published in the Federal Register. The claimant insists that the government may not employ in support of condemnation an unpublished standard of allowable tolerances, known only to itself and sprung upon the unsuspecting merchant at a condemnation hearing and after efforts to rehabilitate the food substance.

1. In some instances the courts have softened the impact of literal enforcement by imposing a *de minimis*, qualification on the statute. United States v. 133 Cans of Tomato Paste, 22 F.Supp. 515 (E.D. Pa.1938); Developments in the Law— Federal Food, Drug and Cosmetic Act, *supra.* It has been recognized that the allowed administrative tolerances may be themselves an acceptable administrative determination of what is *de minimis,*

Dean Rubber Manufacturing Company v. United States, 356 F.2d 161 (8th Cir. 1966).

2. The claimant contends that the figure of 15.1% did not come from examination of reconditioned beans but of beans not reconditioned, and that the procedures employed by the government microbiologist in searching for mold were erroneous. These are issues for the District Court.

His complaint is not without equity, if for no other reason than that the provisions of § 334(d) governing release of goods to the owner to be brought into compliance with the Act require that rehabilitation be under the supervision of the government and with the expense of supervision paid by the owner.

In view of the disposition which we make of the case, and of amendments to the Administrative Procedure Act the effect of which have not been considered or briefed by the parties, we do not reach the issue of publication.[3]

■ We remand the case to the District Court for it to determine under a correct reading of the statute whether the coffee is adulterated. It may accept as a judicial standard the allowable tolerances now permitted by the Secretary, whether published or not. A court may apply a stricter standard than the Secretary and hold a food substance adulterated though within the Secretary's tolerances. Considering the positive command of the statute, the power of the court to allow a greater departure from purity than the administrative tolerances is less certain.

For all future purposes of this case the claimant is entitled to be told what the allowable tolerances are.

Our remand is without prejudice to the claimant's again seeking (before or after any hearing on the condition of the coffee) authority from the District Court to further recondition it. We do not imply what action the District Judge, conversant with the facts, should make on such a petition, if filed.

■ If the coffee is found to be adulterated it must be destroyed. Disposition of it is controlled by the first sentence of § 334(d). The exception to that subsection, adopted by amendment in 1957, authorizes under limited and prescribed conditions the export of articles condemned under § 334. Those conditions are not met in this instance, since the adulteration occurred after the coffee was imported. The language of the statute and the legislative history[4] permit no other conclusion. This Circuit already has held that 21 U.S.C. § 381 does not apply to allow reexport of coffee that has been imported and condemned as adulterated. Otis McAllister & Co. v. United States, 194 F.2d 386 (5th Cir. 1952). See also, 230 Boxes of Fish v. United States, 168 F.2d 361 (6th Cir. 1948); United States v. Catz American Co., 53 F.2d 425 (9th Cir. 1931).

Vacated and remanded for proceedings not inconsistent with this opinion.

---

3. In his dissent in United States v. 449 Cases, Etc., 212 F.2d 567, 575 (2d Cir. 1954), Judge Frank urged that unpublished tolerances violated the Administrative Procedure Act, 5 U.S.C. § 551 et seq. Since the coffee in issue was seized, but before it was burnished, the 1966 and 1967 Amendments to the Administrative Procedure Act were adopted. See particularly, 5 U.S.C. § 552(a) (1).

4. S.Rep. No. 993, 85th Cong., 1st Sess. 1–3 (1957); H.R.Rep. No. 933, 85th Cong., 1st Sess. 1–3 (1957).