UNITED STATES of America

v.

**76,552 POUNDS OF FROG LEGS.**

Civ. A. No. 75–B–221.

United States District Court, S. D. Texas, Brownsville Division.

Sept. 10, 1976.

Edward B. McDonough, Jr., U. S. Atty., and John T. Johnson, Asst. U. S. Atty., Houston, Tex., for the Government.

Clendenin, O'Leary & Sanchez, Jack D. Sanchez, Brownsville, Tex., for claimant, Progressive Sea Products, Inc.

## MEMORANDUM

GARZA, Chief Judge.

This is an action for condemnation of certain adulterated frog legs that were brought into the United States in violation of 21 U.S.C.A. § 301, § 331, and § 334(d)(1) and 19 U.S.C.A. § 1592. The customs statutes, 19 U.S.C.A. § 1592, provide for forfeiture for making false statements when introducing imported merchandise in interstate commerce; the food and drug statutes, 21 U.S.C.A. § 331(a) and § 334(d)(1), provide for condemnation of adulterated or mislabeled foods. Jurisdiction is conferred by 28 U.S.C.A. § 1345, since the United States is the Plaintiff, and by 28 U.S.C.A. § 1355, since this is a forfeiture action. The original claimants, Manuel Sanchez and Progressive Sea Products, Inc., (hereinafter Progressive) filed Motions for Release of Article contending this Court has authority, prior to condemnation of the food, to grant its release for export if the provisions of 21 U.S.C.A. § 381 are met. At the hearing on the Motions held on February 2, 9, and 10, 1976, the claimant, in the alternative, made an oral motion for release of the article for reconditioning, subsequent to condemnation, pursuant to the provisions of 21 U.S.C.A. § 334(d)(1).

After the hearing, the original claimants, Manuel Sanchez and Progressive and the Government filed Motions for Summary Judgment and the Mercantile Trust Company National Association filed a Motion to Intervene as a claimant. Because of the admissions and stipulations of the parties, the record of a collateral criminal proceeding, *United States of America v. Progressive Sea Products, Inc.*, a corporation and Manuel A. Sanchez, Jr., an Individual, Criminal No. 76–B–112 (May 17, 1976, S.D. Tex.), and a willingness of the parties to stand on the evidence presented at the hearing, there is no genuine issue of material fact regarding whether the food involved herein should be condemned. After an extensive three day hearing, this Court feels nothing further can be offered by the parties that would aid in the exercise of the discretionary authority granted by Congress under the provisions of the Federal Food, Drug and Cosmetic Act (hereinafter the Act), 21 U.S.C.A. § 301, *et seq.* The record has not been fully developed regarding the customs law violation, however, because specific instances of false statements were neither pleaded nor shown to be undisputed. This Court will treat the parties' Motions for Summary Judgment as Motions for Partial Summary Judgment.

During the hearing the claimant called to the witness stand Isauro Farias, a Customs Warehouse Official, Ricardo Perez Medrano, a Customs Broker, Manuel Ornelas Ramos, a lawyer from Mexico, Tim Edwards, the Manager of the Valley Trucking Co., Sam Martinez, an employee of the Claimant Progressive Sea Products, Inc., and Manuel Sanchez, the President of the claimant Progressive Sea Products, Inc. During the hearing the United States called to the witness stand Jack Ackerman, a former employee of Marine Protein, Inc., John Bittenbender, Federal Food and Drug Administration Investigator (hereinafter F.D.A. or F.D.A. Agent), Servando Hernandez, one of the owners of Industrias G.M.E., a Mexican corporation located in San Fernando, Mexico, Roman L. Longoria, the Import Program Manager and Director of the Mexican

Liaison Staff of the F.D.A., William Graham, Compliance Officer with the F.D.A., and Special United States Customs Agent Gene Nicko. On the basis of this testimony, the documentary evidence, the record of a criminal proceeding arising out of the same incident, and certain stipulations entered into by the parties, the following facts were established.

Agent Gene Nicko, of the United States Customs Service, received information from a confidential informer that certain frog leg shippers were engaged in illegal activity. He was told that frog leg importers are forced to sell, at depressed prices, all contaminated frog legs that had been refused importation entry into the United States. Salvage buyers, who bought this food product at reduced prices, would subsequently illegally reintroduce this food into the United States at regular prices. His information was that Manuel Sanchez, Jr., owner of Progressive Sea Products, Inc., was buying large quantities of rejected frog legs, and consigning them to Jose Mendoza, a buyer in Mexico, for export. Once out of the country, the contaminated frog legs would be packed under other sea products and brought back into the United States and sold as wholesome food products. Pursuant to this information Agent Nicko began his investigation.

He inspected records kept at the Brownsville Port of Entry which indicated that large quantities of frozen frog legs, consigned to Jose Mendoza, were being kept at the Tex-Mex Cold Storage facility in Brownsville, Texas. Agent Nicko enlisted the aid of Customs Agents at the Port of Entry to keep him informed when frog legs were either exported or imported. Nothing happened for six weeks so Nicko decided to check out the local cold storage facilities in Brownsville. When he interviewed the Manager, Walter Brimmer, he was told that some of Progressive's employees were in the back of the facility repackaging frog legs at that very moment. The agent investigated and discovered that Penninsular Brand Frog Legs, Products of India, were being repackaged into boxes marked "Prod-

ucts of Mexico, packed by Industrias G.M.E., Mexico, D.F.", but this was not being done under the supervision of a Customs Officer. He was told the boxes from India were in such poor condition they necessitated repackaging.

During his investigation he noticed the boxes had been manufactured by the International Paper Company in Edinburg, Texas. The manager of the paper box company was contacted and he told Nicko that the boxes had been sold to a distributor named D. K. Young. Mr. Young was contacted and it was determined that Progressive, of Brownsville, Texas, ordered 15,000 ten pound boxes and 4,000 forty pound boxes. All these boxes were labeled: "Products of Mexico, Frozen Frog Legs, Packed by Industrias G.M.E., Mexico, D.F." These boxes had been shipped to Winter Garden Cold Storage facility in Brownsville, Texas.

In investigating the records of Winter Garden Cold Storage, Nicko determined that 20,000 pounds of frog legs stored there had been shipped north. He determined that some of the frog legs came from Marine Protein, Inc., some from Pez-Mex, Inc., in Matamoros, Mexico, and some had been transferred from Tex-Mex Cold Storage, where he had witnessed the repacking. Most were repackaged in the Product of Mexico box. Nicko was skeptical of what he had been told about the repacking because only five to ten per cent of the boxes needed repackaging. He also discovered Progressive had ordered enough boxes to pack the contents of the entire warehouse and these boxes were being stored in Brownsville, Texas, instead of being sent to Mexico. It was probably thought unusual that an American company would order boxes labeled "Products of Mexico" and bearing another company's name. This could be explained by credit necessities and the close connection claimant Sanchez alleges he had with the Mexican company. Some doubt is cast on this explanation, however, since it was disputed during the hearing whether claimant Sanchez was authorized to use the name of the Mexican company.

Further investigation revealed that a great number of frog legs were in violation of the 90-day export limitation and extensions had not been requested. The Customs Agent felt this indicated the frog legs were not intended for export and that the repacking had been done to conceal the true nature of the frog legs. When it was discovered that Progressive had in fact sold contaminated frog legs in domestic commerce when they should have been under bond but were not, both the Secretary of the Treasury and the Secretary of Health, Education and Welfare decided to seek forfeiture of the food for various violations of the Customs statutes and the Food and Drug Act.

At the hearing the claimants argued that some of the frog legs were mistakenly sold in domestic commerce when they were mistakenly commingled with wholesome frog legs. The Government argues this position is untenable because: the documentary evidence in claimant's possession should have put claimant on notice these frog legs were contaminated and under bond; the testimony reflects, as does claimant's failure to produce proof to the contrary, that at the time of the alleged mistake claimant only had contaminated frog legs in storage and there were no sound ones with which they could have become confused, and the claimants admitted that Mr. Sanchez, a successful businessman, knew these shipments of frog legs were contaminated when he bought them.

On May 10, 1976, after pleading guilty to Count One of a seven count indictment, charging him with selling adulterated frog legs in domestic commerce, the claimant Manuel Sanchez thereafter received a $10,-000 fine and a one-year sentence, suspended, and one year probation without supervision after the fine is paid. The claimant, Progressive, pleaded guilty to two counts of the indictment, charging it with selling a portion of this shipment of adulterated frog legs in domestic commerce and with introducing misbranded frog legs in interstate commerce, and it received a total fine of $15,000. Both counts of the indictment to which the claimants pleaded guilty charged them with violations of the Food and Drug Act and not with violation of the Customs laws.

Turning from a review of the facts this Court will dispose of two cumbersome preliminary issues. Before delving into the crux of the matter, this Court will first consider Mercantile Trust Company's Motion to Intervene and the original claimants' Motion for More Definite Statement.

■ Subsequent to the extensive hearing which forms the basis for this Summary Judgment, Mercantile Trust Company filed a Motion to Intervene as a claimant alleging that it has a security interest in co-claimants' inventory and after-acquired property. The Government opposes such intervention because the security interest was not perfected prior to seizure and the Motion to Intervene was untimely.

Unless the claimant had perfected a security interest in the frog legs prior to seizure it would not be entitled to priority even though it has an interest in Progressive's inventory. Any interest Mercantile might have is being virtually represented by the original claimants. Even though Mercantile might have an interest in the frog legs its Motion to Intervene in the Summary Judgment proceeding has been filed too late and is denied in part. The claimant Mercantile will be allowed to intervene in the trial of the customs violations to try to establish its claim, if any.

■ In support of their Motion for More Definite Statement the original claimants assert that the frog legs under seizure include four separate shipments. Claimants contend that the Government's customs violation charges do not apprise them of whether they introduced or attempted to introduce frog legs into commerce by means of false or fraudulent entries or declarations, or false statements, or fraudulent practices. They further contend that the Government's F.D.A. charges do not apprise them how the frog legs were misbranded or

what they were adulterated with or whether they were all adulterated or misbranded.

At the hearing it was clearly developed, stipulated to and admitted that all of the frog legs were adulterated and part were misbranded. This portion of claimants' motion relating to the F.D.A. violations was satisfied.

The Government attempted to prove a customs violation by trying to show the claimants made certain false statements and engaged in certain fraudulent practices. The hearing demonstrated there was a genuine issue of fact regarding the falsity of certain statements and practices and the shipments to which those statements relate. The following statements or practices were disputed: that Jose Mendoza of Mexico was not a bona fide consignee; that Progressive did not have authority to use Industrias G.M.E.'s name on the boxes; that the repackaged boxes were intended for domestic sale and not export; that the fraudulent practice of selling contaminated frog legs related to all the frog legs under seizure. Since this listing may not be exhaustive the Government will be allowed 90 days to supplement it unless this claim is settled or trial is set. If trial is set the list of disputed statements and practices will be set forth in the pre-trial order. The claimants' Motion for More Definite Statement is well taken and is hereby granted in part.

The principal violation of the Federal Food and Drug Act involved transporting adulterated food in interstate commerce and holding adulterated food for sale after it has traveled in interstate commerce. The statutory provisions are hereinafter set forth in their appropriate sequence. The prohibited conduct is set forth in section 331. It provides:

"The following acts . . . are prohibited:

(a) The introduction . . . into interstate commerce of any food . . . that is adulterated or misbranded.

(k) The . . . removal . . . of the labeling of, . . . , a food, . . . while such article is held for sale . . . after shipment in interstate commerce and results in such article being adulterated or misbranded.

The provisions providing for seizure and condemnation are set forth in Section 334 which will be quoted in another portion of this Memorandum.

After disposing of the preliminary issues this Court will next consider the crucial F.D.A. violations. There are several statutory procedures that allow a claimant to obtain repossession, for various purposes, of adulterated food he has imported or attempted to import when the United States has seized such food. The import-export provision of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 381, on which the claimant relies provides:

"(a) The Secretary of the Treasury shall deliver to the Secretary of Health, Education, and Welfare, . . . , samples of food, . . . *which are being imported or offered for import* . . .

    \*    \*    \*    \*    \*    \*

If it appears from the examination of such samples . . . that . . . (3) such article is adulterated, misbranded, . . . then such article shall be refused admission, except as provided in subsection (b) of this section. The Secretary of the Treasury shall cause the destruction of any such article refused admission unless such article is exported, under regulations prescribed by the Secretary of the Treasury, within ninety days of the date of notice of such refusal or within such additional time as may be permitted pursuant to such regulations. . . .

"(b) . . . If it appears to the Secretary of Health, Education, and Welfare that an article included within the provisions of clause (3) of subsection (a) of this section can, by relabeling or other action, be brought into compliance with this chapter or rendered other than a food, . . . , final determination as to admission of such article may be deferred and, . . . , the Secretary . . . , may, . . . , authorize the applicant to perform such relabeling or other action specified in such authorization (including de-

struction or export of rejected articles . . .)

\* \* \* \* \* \*

"(d) A food, . . . intended for export shall not be deemed adulterated . . . if it (1) accords to the specifications of the foreign purchaser, (2) is not in conflict with the laws of the country to which it is intended for export, and (3) is labeled on the outside of the shipping package to show that it is intended for export. . *But if such article is sold or offered for sale in domestic commerce, this subsection shall not exempt it from any of the provisions of this chapter.*"

The second key statutory provision on which the Government relies for seizure and condemnation is 21 U.S.C.A. § 334 and it provides:

"(a)(1) Any article of food, . . . that is adulterated or misbranded when introduced into or while in interstate commerce or while held for sale (whether or not the first sale) after shipment in interstate commerce, . . . , shall be liable to be proceeded against . . . and condemned . . .

\* \* \* \* \* \*

"(d)(1) Any food, . . . condemned under this section shall, *after entry of the decree*, be disposed of by destruction or sale . . . : *Provided*, that after entry of the decree and upon the payment of the costs . . . and the execution of a good and sufficient bond conditioned that such article shall not be sold or disposed of contrary to the provisions of this chapter . . . , *the court may* by order direct that such article be delivered to the owner thereof to be destroyed or brought into compliance with the provisions of this chapter under the supervision of an officer . . . designated by the Secretary, and the expenses of such supervision shall be paid by the person obtaining release of the article under bond. *If the article was imported into the United States and the person seeking its release establishes* (A) *that the adulteration, . . . did not occur after the article was imported, and*

(B) *that he had no cause for believing that it was adulterated, . . . before it was released from customs custody, the court may permit the article to be delivered to the owner for exportation in lieu of destruction upon a showing by the owner that all of the conditions of section 381(d) of this title can and will be met:* Provided, however, That the provisions of this sentence shall not apply where condemnation is based upon a violation of section 342(a)(1)."

Section 334(d)(1) makes reference to several statutory provisions but only sections 381(d) and 342(a)(1) apply to the facts of this case. Since section 381(d) has already been paraphrased, only section 342(a)(1) will be hereinafter set forth. Emphasis in the statutes has been supplied by the Court. Title 21 U.S.C.A. § 342(a)(1) provides:

"A food shall be deemed to be adulterated—

(a)(1) If it . . . contains any . . . deleterious substance which may render it injurious to health; but in case the substance is not an added substance such food shall not be considered adulterated under this clause if the quantity of such substance in such food does not ordinarily render it injurious to health . . . "

Both sections of the Act contain import-export provisions. The Fifth Circuit has harmonized the apparent incongruity but has not extensively interpreted the statute. The pervasive feature of the statutes of allowing repossession by the owner-claimant under certain circumstances indicates a congressional intent to prevent waste of food whenever it can be safely done. The Fifth Circuit considered these import-export statutes in *Otis McAllister and Co. v. United States*, 194 F.2d 386 (C.A. 5, 1952) and in *United States v. 484 Bags of Coffee Beans*, 423 F.2d 839 (C.A. 5, 1970), the Court held that the import-export provision in 21 U.S.C.A. § 381 only applies to foods that have been refused admission. Once food has been condemned it cannot be reexported under the provisions of § 381

but must in addition comply with the provisions of § 334.

Because there are few cases interpreting these statutory provisions this Court must provide its own gloss. The jurisdiction conferred by the Federal Food, Drug and Cosmetic Act encompasses the seizure and condemnation of any article of food physically in interstate commerce or which is sold or held for sale after traveling in interstate commerce even though it has been denied admission into this country by the Bureau of Customs of the Treasury Department. Cf. *United States v. 231 Boxes of "Frozen Tullibees"* (No. 14597, S.D.Cal., March 12, 1949). The Act in Title 21 U.S.C.A. § 381 provides that prior to condemnation the Secretary of the Treasury has authority, for certain purposes, to release adulterated food that has been denied entry into the United States. When the Secretary seeks condemnation, under the circumstances presented in the factual setting of this case, he has exercised his discretionary authority to disallow any of the alternatives favorable to the claimant. After condemnation, if appropriate, the Courts have discretionary authority to release adulterated food for certain purposes. In either case the guidelines set forth in the statutes must be followed in exercising this discretion. Subject to the conditions and within the guidelines provided in the Act, the Secretary or the Courts have authority to allow exportation, reconditioning, salvage or destruction of adulterated food. The burden of pleading and proving the applicability of one of the statutory alternatives to destruction is on the one who seeks the benefit of such exemption. *United States v. 6,796 Bags labeled "River Enriched Rice"*, Civ. No. 75–H–618 (S.D.Tex., May 19, 1975).

The statutory import-export exemption in 21 U.S.C.A. § 381 does not apply to claimant's, Progressive Sea Products, Inc., frog legs. The clear wording of the statute provides that articles intended for export under the provisions of the statute are not exempt if such article is sold or offered for sale in domestic commerce. The record establishes that some of the frog legs in the shipments under seizure were sold and offered for sale in domestic commerce. The statute further provides that the Secretary shall seek condemnation if the article is not exported within 90 days and an extension is not granted under the appropriate regulations. The record establishes that the frog legs, if ever intended for export, were not exported within 90 days and an extension was not granted.

After being given an opportunity to establish his entitlement to the statutory exemption the claimant failed to meet his burden. Claimant failed to establish that the food was not in conflict with the laws of Mexico. The evidence establishes that the claimant does not have a permit to export adulterated frog legs into Mexico and that the laws of Mexico would be violated if he did try to export the contaminated frog legs.

This Court holds that the claimant is not entitled to the benefits of the statutory exemption, 21 U.S.C.A. § 381, allowing the exportation of adulterated frog legs which have been refused entry. This Court further holds the Secretary of Health, Education and Welfare, through the F.D.A., did not abuse its discretionary power to revoke claimant's import-export privilege under § 381 and seek condemnation. Cf. *Carl Borchsenius Co., Inc. v. Gardner, U. S. Secretary of Health, Education and Welfare*, 282 F.Supp. 396 (E.D.La.,1968). After considering the threshold question of the applicability of a statutory exemption this Court must next consider the further question, whether the United States has proven that the food should be condemned and if condemned what disposition should be made.

This Court finds from the terms of the Federal Food, Drug and Cosmetic Act that it has jurisdiction to proceed with the condemnation of an article of food physically in interstate commerce even though that article has been refused importation and is in transit through the United States for exportation under bond where the owner of the food destined for export fraudulently

sells part of it in domestic commerce and the food is physically present in the United States in excess of the ninety-day export limitation. The holding that a claimant can lose his export exemption is based on statutory interpretation, a reading of analogous case law and the need to protect citizens of the United States from unknowingly consuming contaminated food products. There is no genuine issue of fact regarding the issue of condemnation and Summary Judgment is appropriate.

■ The frog legs are a food within the meaning of 21 U.S.C.A. § 321(f)(1). It is undisputed they are adulterated within the meaning of 21 U.S.C.A. § 342(a)(1) with pathogenic salmonella. They were introduced into interstate commerce within the meaning of 21 U.S.C.A. § 334(a), when they were shipped by truck, without bond, from New York, New York, to Brownsville, Texas, and not exported before expiration of the ninety-day grace period. Once part of the shipment was sold in interstate commerce the entire shipment can be deemed to have entered interstate commerce. This Court holds the frog legs are subject to condemnation pursuant to 21 U.S.C.A. § 334(a) and (d) and the United States is entitled to a judgment of condemnation. A Summary Judgment of condemnation is this day being entered.

■ Having determined that the frog legs should be condemned, this Court must next determine whether to order the frog legs destroyed or to allow the claimant conditional repossession. This Court has discretionary power to permit the claimant's attempt to salvage a potentially valuable food regardless of the claimant's mala fides. Federal Courts must, however, protect the public interest in keeping from the channels of commerce food products so adulterated as to injure or endanger health, and to ensure that food products are properly branded so the consumer can know there is no misrepresentation as to substance, and that the food purchased is what it purports to be.

■ This Court holds the claimant is not entitled to the benefit of the import-export provisions found in 21 U.S.C.A. § 334(d)(1). As previously discussed the claimant cannot comply with all the requirements found in 21 U.S.C.A. § 381 and this is a condition precedent to invocation of the import-export provisions found in 21 U.S.C.A. § 334(d)(1). Since the claimant offered part of the frog legs for sale in domestic commerce he is not entitled to the benefits of its import-export provisions. Additionally, Section 334(d)(1) is not available where food is condemned because it is injurious to health. This is necessary to prevent adulterated food from being commingled with good lots of the same food and again offered for import under conditions that would make the adulteration difficult to detect. The evidence presented at the trial and the guilty plea entered in Criminal No. 76–B–112, prove that the claimant had cause for believing and knew that the frog legs were adulterated and were sold in domestic commerce. Claimant's Motion to be allowed to export the frog legs is denied.

The Government contends the claimant is not entitled to conditional repossession because: the evidence proves a fraudulent scheme to sell contaminated frog legs to an unsuspecting public and the claimant has pleaded guilty to this charge in a criminal proceeding, and the evidence proves that the claimant did not make a mistake as alleged at the hearing. The claimant contends that he has been adequately punished for his wrongdoing in the criminal proceedings and should be allowed to salvage a potentially valuable food under conditions that adequately protect the public.

■ This Court holds that the frog legs should be turned over to the claimant to be brought into compliance with the Act provided they have not deteriorated to such an extent they cannot be reconditioned. If they cannot be reconditioned, they will be destroyed. The reconditioning process will be under strict supervision by agents of the Federal Food and Drug Administration and the reprocessing will be completed in the United States. The Secretary of Health,

Education and Welfare shall designate both the agents he desires to supervise the reprocessing and the plant at which the reprocessing will be completed. These designations shall name specific officers and plants, shall be in writing, and shall be filed in this Court within 45 days from the date of entry of this Memorandum. The choice of plants, within a reasonable distance from Brownsville, Texas, is discretionary with the Secretary of Health, Education and Welfare but suggestions from the claimants can be considered. The bulk of the frog legs shall not be released from custody until the Secretary of Health, Education and Welfare or other appropriate office has filed the written designation and the claimant has filed a sufficient bond and has otherwise complied with the compliance provisions of Section 334(d)(1).

Prior to release of the bulk of the frog legs, the claimant, in the presence of an F.D.A. agent, will be allowed to inspect the frog legs and to withdraw samples to determine if reprocessing is feasible. If the claimant determines reprocessing is not feasible, the frog legs will be destroyed. The claimant shall bear the costs of this proceeding of reprocessing and of Government supervision. An order granting Partial Summary Judgment carrying out these provisions is this day being entered.

■ The resolution of claimant's motions has been complicated by the customs violations which arose from the same factual setting as the food and drug violations. There is a genuine issue of material fact regarding the exact nature of each false statement and fraudulent practice and the exact frog legs to which such statements or practices relate. The principal customs violation involved making a false statement during importation. The statutory provision found in 19 U.S.C.A. § 1592 provides:

"If any . . . owner . . . introduces, or attempts to . . . introduce, into the commerce of the United States any imported merchandise by means of . . . any false statement, written or verbal, or by means of any false or fraudulent practice . . .

such merchandise, *or the value thereof,* . . . shall be subject to forfeiture, *which forfeiture shall only apply to* the whole of *the merchandise . . . in the* case or *package containing the particular article . . . of merchandise to* which such fraud or *false . . . statement relates.*

The record of the hearing indicates the frog legs subject to the customs violations may have already been destroyed. Summary Judgment of Forfeiture based on customs violations is denied.

■ The claimant also contends Customs has no authority to seek condemnation since the frog legs had been refused entry into the United States and would have been under a transportation and export bond but for the negligence of the customs agents. The parties have not cited the statute to this Court but the statutory provision regarding the Customs transportation and export entry is found in 19 U.S.C.A. § 1553. That statute provides:

"Any merchandise, . . . the importation of which is prohibited, . . . may be entered for transportation in bond through the United States . . . without appraisement or the payment of duties and exported . . . ."

Claimant's argument overlooks the fact that this is a privilege that may be revoked and that the merchandise may be deemed imported, even where there is no actual entry. There is such a deemed entry provision in 19 U.S.C.A. § 1592 but the factual predicate for the invocation of the deemed entry provision must be proved.

Since a Summary Judgment determining possible violations of the customs laws is not appropriate at this time, the claimant will be allowed, as the Government agreed at the hearing, to post an additional bond for the value of the frog legs at the time of seizure. The value will be the average price paid by the claimant for contaminated frog legs or $50,000, whichever is greater. Cf. 19 U.S.C.A. § 1592. The Government can proceed at trial to prove the falsity of any alleged statements and the shipments of frog legs to which they relate. Subse-

quent to trial the claimant must seek remission from the Secretary of the Treasury for the value of any frog legs that might be forfeited for customs violations.

The Clerk will send a copy of this Memorandum together with a copy of the Partial Summary Judgment of even date to the United States Attorney and to the Claimants.

PARTIAL SUMMARY JUDGMENT OF CONDEMNATION, FORFEITURE AND RELEASE FOR RECONDITIONING OF FOOD UNDER FEDERAL FOOD, DRUG AND COSMETIC ACT

This cause came on for consideration on the Motions for Summary Judgment filed by Edward B. McDonough, Jr., United States Attorney for the Southern District of Texas, and by the claimants, Progressive Sea Products, Inc., and Manuel A. Sanchez, Jr., which are treated as Motions for Partial Summary Judgment, and it appearing that there is not a genuine issue of material fact regarding the claim of violation of the Federal Food, Drug and Cosmetic Act, 21 U.S. C.A. § 301 et seq., and it further appearing there is a genuine issue of material fact regarding the Customs laws violations, 19 U.S.C.A. § 1592, so that only a Partial Summary Judgment is appropriate, the parties' Motions for Summary Judgment are granted in part and denied in part for the reasons stated in the Memorandum entered this same date.

It is ORDERED, ADJUDGED, AND DECREED that 76,552 pounds, more or less, of adulterated frog legs be, and they are, hereby condemned and forfeited to the United States of America in accordance with the Federal Food, Drug and Cosmetic Act of June 25, 1938, 21 U.S.C.A. § 301 et seq.; and

It is further ORDERED, ADJUDGED, AND DECREED that Marshall F. Rousseau, the United States Marshal for the Southern District of Texas, be, and he hereby is directed to turn over and deliver said frog legs, to the District Supervisor of Customs, Treasury Department, or his representative; and

It is further ORDERED, ADJUDGED AND DECREED that said District Supervisor of Customs, at the expiration of 45 days from entry of this Partial Summary Judgment, turn over, release and deliver to the claimants, Progressive Sea Products, Inc., and Manuel A. Sanchez, Jr., or their duly authorized representative, under the supervision of a properly designated employee of the Department of Health Education and Welfare and a designated Customs Agent, the seized frog legs, upon the payment by the claimant of any and all expenses and charges resulting from the seizure and storage of said frog legs, together with the costs of court, and the execution of bond in the amount of $25,000 and the payment of $50,000 into the registry of the court. The bond in the amount of $25,000 shall be conditioned that said frog legs shall not be sold or disposed of contrary to the provisions of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 301 et seq. The claimants shall be allowed to withdraw samples of the frog legs for testing purposes.

It is further ORDERED, ADJUDGED, AND DECREED that the claimants shall pay all the costs and charges of whatever nature in connection with the case and the costs of reconditioning and supervision of the reconditioning of the frog legs.

The Clerk will send a copy of this Partial Summary Judgment together with a copy of the Memorandum of even date to the United States Attorney and to the Claimants.